# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### July 1, 2008 Session

## STATE OF TENNESSEE v. ANTHONY PHILLIP GEANES

**Direct Appeal from the Circuit Court for Hardeman County**
**No. 06-01-0215    J. Weber McCraw, Judge**

---

**No. W2007-02223-CCA-R3-CD - Filed November 24, 2008**

---

A Hardeman County jury convicted the defendant, Anthony Phillip Geanes, of reckless endangerment with a deadly weapon, a Class E felony. The trial court sentenced the defendant as a multiple offender to three years imprisonment, consecutive to another sentence.[1] In this appeal, the defendant raises the issue of whether the evidence was sufficient to support his conviction for reckless endangerment with a deadly weapon. Upon review of the evidence, we are constrained to hold that the evidence was insufficient to prove the defendant guilty of reckless endangerment with a deadly weapon. Therefore, we reverse the judgment of the trial court, vacate the conviction and dismiss the charge.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed, Conviction Vacated and Charge Dismissed**

J.C. MCLIN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, J., filed a separate concurring opinion. ALAN E. GLENN, J., filed a dissenting opinion.

Frank Deslauriers, Covington, Tennessee, for the appellant, Anthony Geanes.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; Elizabeth T. Rice, District Attorney General; and Joe Van Dyke, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Facts

The events giving rise to the conviction in this case occurred on October 30, 2005, on English Street in Bolivar, Tennessee. Mike Kennamore, an off duty investigator for the Hardeman County Sheriff's Department, testified at trial that he received a call to investigate shots being fired on English Street. Officer Kennamore stated that when he arrived at the scene, he observed several

---

[1] The judgment form in case No. 06-01-0215 only lists three years consecutive to TDOC sentence.

other officers and two or three marked patrol cars. Further, the officers pointed out to him what appeared to be bullet holes in the house belonging to Tameka Woods, one of the victims. Officer Kennamore stated that he observed a jacket on the ground and some other items, none of which appeared to have been disturbed prior to his arrival. According to Officer Kennamore, he recovered evidence from the scene, took photographs and developed Anthony Geanes and his brother, Joe Geanes, as suspects. At trial, Officer Kennamore identified Anthony Geanes and four 9mm shell casings recovered from a 9mm weapon at the scene. Two shell casings were recovered from the Geanes' front yard and two from Tameka Woods' front yard. Several of the photographs introduced at trial revealed bullet holes inside the residence of Tameka Woods that had apparently entered the victim's house from the outside. Of particular interest, Exhibit No. 7, revealed a series of photographs showing what appeared to be a bullet hole entering from outside the Woods' residence, passing through a child's bedroom before exiting the residence. Officer Kennamore testified that he was not present when the altercation took place. He further testified that he observed the victims[2] and they seemed upset and scared.

On cross examination, Officer Kennamore testified that he was familiar with what happens to 9mm shell casings after firing a 9mm weapon. According to Officer Kennamore, he has had 9mm shell casings eject and fall back on him while others may eject 12 to 15 feet away.

Officer Kennamore testified that he found four bullet holes entering the house and four shell casings outside the house. He further stated that shell casings are hard to find in the grass and that he could not say whether the four shell casings found at the scene were from the bullets that entered the house, or if they were separate shell casings. When asked who lived across the street from Tameka Woods, Officer Kennamore stated that it was his understanding that the Geanes[3] and Lisa Cupples lived there. He stated that he did not recall if he was present during the arrest of Mr. Geanes or during the questioning of Ms. Woods, but that he did not question Mr. McClellan or Ms. Allen.

### Tameka Woods

Tameka Woods testified that in October of 2005, she lived at 210 English Street in Bolivar, Tennessee with her mother, Inette Allen, her then four-year old son and her boyfriend. She stated that in 2005, she was on probation for a previous charge unrelated to the incident occurring in October of 2005. She stated that in 2005, she had to go to court for a violation of probation resulting from the previous charge because she failed a drug test for marijuana.

Ms. Woods testified that on the night of October 30th, her mother's house got "shot up." Ms. Woods stated that while she was cooking, she heard a commotion outside and that she went outside to see what was going on. She stated that while outside, she encountered Lisa Cupples and that they had an argument which led to a fight and a shooting. Ms. Woods stated that Anthony Geanes got

---

[2] Three individuals were identified as victims, Tameka Woods, Kevin McClellan and Inette Allen.

[3] The record does not reflect whether Officer Kennamore's reference to "the Geanes" refers to Anthony Geanes or Willie Joe Geanes or both.

a gun and shot into the air, maybe two or three times. Ms . Woods stated that after the first shot, she started to run toward her mother's house and that she did not know the direction of the other shots. Ms. Woods stated that she feared for her safety and was "scared" that her mother or somebody else may have gotten shot.

Ms. Woods stated that Willie Joe Geanes took the gun from Anthony Geanes and chased them in the house while firing about four or five shots towards the house. Ms. Woods identified several photographs portraying bullet holes entering her house. A series of photographs identified by Ms. Woods depicted bullet holes entering her house and going through the bedroom where her then four-year old son slept.

On cross-examination the following exchange took place between counsel for the defendant and Ms. Woods:

Q. Counsel: Did you ever testify, Ms. Woods that Mr. Anthony Geanes never shot anybody?
A. Ms. Woods: I said he didn't shoot at us. I said he shot at the air when I seen it the first time, but I don't know where he shot after that.

When asked about Mr. Willie Joe Geanes, brother of Anthony Geanes, Ms. Woods responded as follows:

Q. Counsel: Did you see Mr. Willie Joe Geanes shooting?
A. Ms. Woods: Yes, sir, because I had to close the door on him to keep him from coming in the house to shoot us.

### Kevin McClellan

Kevin McClellan testified that in October of 2005, he resided on English Street in Bolivar, Tennessee. Mr. McClellan stated that he observed the incident occurring between his girlfriend and Willie Joe Geanes' girlfriend. Mr. McClellan stated that he observed Anthony Geanes pull a gun out and fire a single shot into the air during the incident. According to Mr. McClellan, it was his opinion that the shot was a warning shot to try and stop the commotion that was going on. Mr. McClellan stated that the defendant did not fire at him and that he did not observe the defendant fire at anyone. Mr. McClellan stated that he thought that Joe's[4] girlfriend brought the gun to the scene. He also observed the defendant's brother, Joe Geanes, "grab the gun" from the defendant, Anthony Geanes, and "start[ed] shooting at us."

### Inette Allen

---

[4] The record reflects that Kevin McClellan refers to Willie Joe Geanes as Joe Geanes.

Inette Allen testified that in October of 2005, she lived at 210 English Street, in Bolivar, Tennessee. She further stated that she had lived there for six years and that she was an employee of the Hardeman County Correctional Facility for the past ten years.

Ms. Allen stated that she did observe the incident at her home on October 30, 2005. Ms. Allen stated that she was not certain about the exact time, but that prior to the incident she had been to a holiday party on Johnson Street where her daughter, Takesha, and the children lived. Upon arriving at her home on English Street and getting ready for bed, she heard Joe Geanes' "loud cursing" and went back outside to see what was going on. According to Ms. Allen, Tameka Woods and Lisa Cupples were having an argument, which ended in a "little fight." Ms. Allen stated that she knocked Lisa off "Meka" and observed Anthony come to the scene with a gun. Ms. Allen stated that she did not observe whether the defendant, Anthony Geanes, got the gun from the house or the car. According to Ms. Allen, she observed Anthony Geanes fire a shot "up in the air and then he made another shot." Ms. Allen stated that after Anthony Geanes fired the shots, Joe Geanes grabbed the gun from Anthony and started firing at Tameka and Kevin McClellan, "running them up through the porch, shooting all through the house." Ms. Allen stated that Joe Geanes kept shooting at them until she yelled out his name "Joe", at which time he turned around, looked at her and ran back across the street. Ms. Allen stated that she then observed Anthony and Joe get into a car and Lisa into another car and leave the scene. The police were called after they left the scene. Ms. Allen stated that she was in fear of her safety, and did not know where the bullets fired by Anthony Geanes were going.

On cross-examination, Ms. Allen stated that she was the mother of Tameka Woods and that Lisa Cupples was the girlfriend of Joe Geanes. Ms. Allen stated that she pulled Lisa off of Tameka because she had her hair and at that point "Mr. McClellan and Mr. Joe Geanes started jawing at each other". Ms. Allen, further testified that she never saw Anthony Geanes shoot at anyone and the only shot she saw was up in the air.

## Anthony Phillip Geanes

Anthony Geanes testified that his brother, Joe Geanes, and Lisa Cupples, Joe's girlfriend, lived across from 210 English Street in October of 2005. According to Anthony Geanes, he did not live at the 210 English Street address, but knew all of the parties involved and that he was present and witnessed the incident on the night of October 30, 2005. According to Anthony Geanes, he observed Tameka Woods and Lisa Cupples fighting. Anthony Geanes stated that he observed Kevin McClellan and Joe Geanes come to the scene, and an argument ensued, "then the next thing you know they started fighting." According to Anthony Geanes, he tried to break up the commotion, but he did not have anything to do with the fighting. Anthony Geanes further denied that he had a gun and also denied that he fired any shots into the air.

On cross-examination, Anthony Geanes stated that he presently lived at 310 Embry Street and denied any involvement in the incident.

## Willie Joe Geanes

-4-

Willie Joe Geanes testified that he was the brother of Anthony Geanes and in October of 2005, lived across the street from Tameka Woods. Willie Joe Geanes stated that his girlfriend, Lisa Cupples, and Tameka Woods were involved in an altercation on the night of October 30, 2005. Willie Joe Geanes stated that Kevin McClellan and Ms. Woods' mother, Inette Allen, were involved in the altercation, which prompted him to get involved. When asked to tell the jury what he did, Willie Joe Geanes stated the following:

> A. Okay. When the fight broke out, Meka and my girlfriend got in a fight and her mother jumped in it and McClellan jumped in it, then I jumped in it. He hit me on the head with an iron chair. Then I ran to the car. I got a pistol. I ran back. I thought about it. I shot up in the air. Then I shot two more times at the house. Then I left. I went in the country. That's what happened. Then a month later I turned myself in.
> Q. Did your brother, Anthony Geanes, ever grab that gun?
> A. Huh-uh. He was there at first. When I went to the car, he was getting in his white car leaving.

Willie Joe Geanes further testified that he was presently incarcerated and that he pleaded guilty to the charges of aggravated assault and reckless endangerment for his involvement.

Based upon the evidence presented, the jury convicted the defendant of felony reckless endangerment. Thereafter, he was sentenced to three years imprisonment consecutive to another sentence.

## **Analysis**

On appeal, the defendant challenges the sufficiency of the convicting evidence. Specifically, the defendant asserts that the evidence submitted at trial was insufficient to establish that he committed the offense of felony reckless endangerment by firing a gun into the air to stop a fight within close proximity of three unarmed people.

Upon review, we again repeat the well-established rule that once a jury finds a defendant guilty, his or her presumption of innocence is removed and replaced with a presumption of guilt. *State v. Evans,* 838 S.W.2d 185, 191 (Tenn. 1992). Therefore, on appeal, the convicted defendant has the burden of demonstrating to this court why the evidence will not support the jury's verdict. *State v. Carruthers,* 35 S.W.3d 516, 557-58 (Tenn. 2000); *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). To meet this burden, the defendant must establish that no "rational trier of fact" could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Evans,* 108 S.W.3d 231, 236 (Tenn. 2003); *see* Tenn. R. App. P. 13(e). In contrast, the jury's verdict approved by the trial judge accredits the state's witnesses and resolves all conflicts in favor of the state. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). The state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. *Carruthers,* 35 S.W.3d at 558. Questions concerning the credibility of the witnesses, conflicts in trial testimony, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the

trier of fact and not this court. *State v. Bland,* 958 S.W.2d 651, 659 (Tenn. 1997). We do not attempt to re-weigh or re-evaluate the evidence. *State v. Rice,* 184 S.W.3d 646, 662 (Tenn. 2006). Likewise we do not replace the jury's inferences drawn from the circumstantial evidence with our own inferences. *State v. Reid,* 91 S.W.3d 247, 277 (Tenn. 2002).

The guilt of the defendant as well as any fact required to be proved may be established by direct evidence, by circumstantial evidence, or by a combination thereof. *See State v. Pendergrass,* 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). In fact, a criminal offense may be established exclusively by circumstantial evidence so long as the evidence excludes all other reasonable theories except that of the defendant's guilt. *See State v. Crawford,* 225 Tenn. 478, 470 S.W.2d 610, 612 (Tenn. 1971). In other words, "[a] web of guilt must be woven around the defendant from which he cannot escape and from which facts and circumstances the jury could draw no other reasonable inference save the guilt of the defendant beyond a reasonable doubt." *Id.* at 613.

The defendant argues that the underlying facts are insufficient to establish that he committed the offense of felony reckless endangerment and we agree.

In order to convict the defendant, the state was required to prove beyond a reasonable doubt that the defendant:

(1) Engaged in conduct which placed or might have placed another person in imminent danger of death or serious body injury;
(2) that the defendant acted recklessly. Tenn. Code Ann. § 39-13-103(a); and
(3) that the offense of reckless endangerment was committed with a deadly weapon.

Reckless endangerment committed with a deadly weapon is a Class E felony. Tenn. Code Ann. § 39-13-103(b).

Reckless endangerment is referenced in terms of risk to another person produced by one's conduct. This Court has previously recognized the potentially "absurd" and "unreasonable" results that may arise from permitting prosecution of one discharging "a weapon under any circumstances where any other human being might possibly be present or where a stray bullet might possibly strike another person." *State v. Michael David Culbertson*, No. 03C01-9412-CR-00449, slip op. at 2, 1995 WL 512077 (Tenn. Crim. App. Aug. 30, 1995).

It has been held that merely discharging a gun into the air, standing alone, is not sufficient to constitute the commission of reckless endangerment. *See State v. Fox*, 947 S.W. 2d 865, 866 (Tenn. Crim. App. 1996). The discharge must create an imminent risk of death or serious bodily injury to some person or class of persons. *Id*.

For the threat of death or serious bodily injury to be "imminent" as required to establish reckless endangerment, a person must be placed in a reasonable probability of danger as opposed to a mere possibility of danger. T.C.A. §39-13-103.

The facts of this case reveal that all three eyewitnesses for the state testified that they saw the defendant fire a gun into the air. One witness testified it was his opinion that the shot was a warning shot to stop the commotion that was going on. None of the state's witnesses testified contra, and there was no proof that the defendant ever fired at any of the victims, even though additional gun shots were heard. Further, no proof was presented by the prosecution that a projectile, fired into the air could or may have caused injury as contemplated by the statute upon its descent.

Accordingly, we reverse the judgment of the trial court, vacate the conviction and dismiss the charge.

_____

J.C. McLIN, JUDGE